# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LEE GUINN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:16-cv-1104 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LAURA LEE GUINN AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Laura Lee Guinn asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny her application for benefits. Because the ALJ erred in evaluating the medical record and rejecting the credibility of Plaintiff's subjective complaints, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

On August 3, 2012, Plaintiff filed an application for benefits, "alleging disability beginning April 12, 2011." (Doc. 9-3 at 15) Her application was denied initially on November 29, 2012, and upon reconsideration on July 19, 2013. (*Id.*) Plaintiff requested a hearing, and testified before an ALJ

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

on November 6, 2014. (*Id.*) The ALJ concluded Plaintiff was not disabled, and issued an order denying benefits on February 5, 2015. (*Id.* at 15-24) The Appeals Council denied Plaintiff's request for review of the decision on June 8, 2016. (*Id.* at 10-14) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Relevant Medical Evidence**

Plaintiff had a history of low back pain due to two work-related injuries in 2005 and 2008. (Doc. 9-8 at 51)  On April 12, 2011, Plaintiff "slipped on an icy area in [a] walk in freezer and hurt her lower back" while at work. She visited Dr. David Tenn for treatment. (Doc. 9-8 at 30, 35)  Dr. Tenn diagnosed Plaintiff with a lumbar sprain/strain and lumbago. (*Id.*)

On May 12, 2011, Plaintiff told Dr. Tenn that "she still [had] back pain though it [was] not as bad." (Doc. 9-8 at 35)  She reported she was "doing her regular duty and would like to continue to do so." (*Id.*)  Dr. Tenn observed Plaintiff "move[d] with no difficulty," but had pain with flexion, and "some pain extending to the right gluteal to the midline and bilateral paraspinous muscles." (*Id.*)  He believed Plaintiff was "not improving very well" and "may benefit from physical therapy." (*Id.*)  Therefore, Dr. Tenn referred Plaintiff to physical therapy, to occur "3 times a week for 3 weeks." (*Id.*)

She began physical therapy with Josh Vance, MPT, on June 8, 2011. (Doc. 9-8 at 30)  Plaintiff reported her pain was a "5/10." (*Id.* at 29)  Mr. Vance found Plaintiff had an "[a]cute impairment" of her range of motion in the lumbar spine, "gluteal muscle mobility, body mechanics awareness, core control, and [leg] strength with moderate impairments in mobility." (*Id.* at 30)  After nine physical therapy sessions, Plaintiff reported her pan was "3/10" on July 1, 2011. (*Id.* at 29)  Mr. Vance found Plaintiff had "improved" range of motion and leg strength, and was then able to walk "without gait

deviations." (*Id.*)

On July 13, 2011, Plaintiff told Dr. Marcus Vaughn, QME, that her pain was "5/10 and in the midline to [right] lumbosacral region which extends to the right hip and in the right lower extremity to the knee." (Doc. 9-8 at 51) Plaintiff stated it "hurt[] to step with her right leg," she had "difficulty" with activities of daily living," and "some diminished function." (*Id.*) Dr. Vaughn observed that Plaintiff also exhibited difficulty with transitional postures, and needed assistance with functional testing. (*Id.*) Dr. Vaugh opined Plaintiff had "[p]araspinous muscle guarding... []at the L3-S1 levels," which were greater on the right. (*Id.*) In addition, there were "[m]ultiple abnormal orthopedic findings… for the right lower extremity." (*Id.*)

Plaintiff "reported a major exacerbation of her right lumbosacral/hip pain because of the position she was in" during physical therapy on July 20, 2011. (Doc. 9-8 at 53) She stated that her "pain elevated to 10/10," and it "subsided to 6-7/10" by July 25. (*Id.*) Dr. Vaughn found Plaintiff continued to have "muscle guarding" and "abnormal orthopedic findings." (*Id.*)

On July 27, 2011, Plaintiff underwent an MRI of her lumbar spine. (Doc. 9-9 at 60) According to Dr. Gail Schlesinger, Plaintiff had "[d]ecreased disk height, disk desiccation, with posterolateral osteophytes noted at the L5-S1 level." (*Id.* at 61) Dr. Schlesinger found "mild to moderate narrowing of the L5 neural foraminal bilaterally." (*Id.*) In addition, she determined Plaintiff had "[m]ild decreased disk height, disk desiccations, with a 1-2 mm defuse disk bulge noted at the L4-5 level," which "flattens the ventral aspect of the thecal sac." (*Id.*) Dr. Schlesinger did not find any nerve root compression. (*Id.*)

On August 8, 2011, Dr. Tenn restricted Plaintiff to "light duty with no repetitive bending or stooping, no lifting, no pushing or pulling greater than 15 pounds, and no prolonged walking or standing [for] more than 30 minutes at a time." (Doc. 9-10 at 20; *see also id.* at 82) He also referred Plaintiff to a specialist in neurosurgery. (*Id.*)

Dr. Thomas Hoyt performed a neurological examination on September 19, 2011. (Doc. 9-8 at 56-63) Dr. Hoyt found Plaintiff had "no radiculopathy, no myelopathy, and no sciatic findings." (*Id.*) In addition, he opined Plaintiff's MRI scan from July 27, 2011 was "basically normal." (*Id.*) As a result, Dr. Hoyt stated he was "having a hard time understanding why she was having … buttock pain."

4

(*Id.*) Dr. Hoyt believed Plaintiff "may have piriformis syndrome" and "right hip derangement," and concluded "a pain management referral [was] appropriate." (*Id.*)

In October 2011, Plaintiff had a nerve conduction study on her right leg. (Doc. 9-9 at 71-72) Dr. Sanjay Deshmukh noted Plaintiff refused a needle EMG. (*Id.* at 72) According to Dr. Deshmukh, Plaintiff had "normal distal latencies and conduction velocities of right tibial and peroneal nerves." (*Id.*) She had "normal peak latencies and amplitudes for right sural nerves." (*Id.*) Dr. Deshmukh concluded Plaintiff's nerve conduction study was normal. (*Id.*)

In November 2011, Plaintiff visited Dr. Michael Wlasichuk, reporting she had "[c]onstant pain in [her] low back, mostly on the right," as well as "numbness in her toes on the right." (Doc. 9-9 at 41) Dr. Wlasichuk noted Plaintiff had an MRI scan that showed "some evidence" of degenerative disc disease and disc bulge at the L4-5 level. (*Id.*) Upon examination, he determined Plaintiff showed tenderness at the L4 and L5 level, a paraspinal spasm on the right side, and trigger points at the L4, L5 levels. (*Id.*) Further, he observed that Plaintiff's gait was normal. (*Id.*) However, Dr. Wlasichuk found Plaintiff's senses were abnormal in her foot, and she had a positive straight leg raise test. (*Id.*)

The following month, Plaintiff told Dr. Wlasichuk that she "had relief with 6 sessions of physical therapy," and described her back pain as "4/10." (Doc. 9-9 at 57) He found Plaintiff continued to have tenderness, and she again had a positive straight leg raise test, though she had a normal gait. (*Id.* at 56-57)

In January 2012, Dr. Wlasichuk noted that Plaintiff was "experiencing [a] flare up in [her] lower back." (Doc. 9-9 at 55) He observed that Plaintiff was "[t]ender to palpation" at the L4 and L5 levels, as well as the right sciatica. (*Id.*) Plaintiff refused an epidural injection, and was "advised to take Celebrex 200mg." (*Id.*)

Plaintiff continued to report pain in her leg and low back in March 2012, with tenderness and a positive straight leg raise test. (Doc. 9-9 at 50) She had an epidural steroid injection at the L3-4 level in her back on March 19. (Doc. 9-8 at 77) Dr. Daniel Hightower believed Plaintiff "tolerated the procedure well without immediate postprocedure complication or complaint." (*Id.*)

Dr. Alan Sanders performed an orthopedic agreed medical examination on April 23, 2012. (Doc. 9-9 at 4) Plaintiff reported she stopped working in March 2012, when her contract with the state

ended. (*Id.* at 5) However, she said "she was responsible for taking care of a 3 year old and a 7 year old." (*Id.*) Plaintiff told Dr. Sanders she had "discomfort and pain to the low back that goes to the right leg;" "numbness and tingling with squeezing her toes;" "cramping of the toes;" and "pain throughout the buttocks, hip, back of the thigh, and throughout the entire right leg and foot." (*Id.* at 7) Plaintiff said she had pain "with any standing or walking" and she was "unable to lift much." (*Id.*) According to Dr. Sanders, Plaintiff had "degenerative disc disease and also aggravated her back with outside activities such as caring for her grandchildren." (*Id.* at 34) He concluded Plaintiff should have treatment that "include[d] the use of analgesics as well as oral anti-inflammatories," "occasional therapy or follow-up, as well as repeat epidural injections." (*Id.* at 36)

In May 2012, Plaintiff told Dr. Wlasichuk that the lumbar epidural injection was "helpful" and her pain level was "3/10." (Doc. 9-9 at 47) However, Dr. Wlasichuk noted that Plaintiff continued to have tenderness, a reduced range of motion, abnormal sensory exam, and a positive straight leg raise test. (*Id.* at 46)

At an appointment with Dr. Wendy Batcher, who worked with Dr. Wlasichuk, in July 2012, Plaintiff no longer had a paraspinal spasm, but Dr. Wlasichuk found Plaintiff had reduced senses in her foot and a "reduced knee jerk." (Doc. 9-9 at 44-45) Plaintiff reported her pain was "6/10," and was "localized to [her] right buttock, [sacroiliac] region and middle back." (*Id.* at 44) Plaintiff believed the effects of her epidural had worn off, and she was using a TENS unit "1-2x [each] day with a pain reduction of 50%." (*Id.*)

Plaintiff reported her pain was "unchanged" when visiting Dr. Wlasichuk on August 7, 2012. (Doc. 9-9 at 43-44) Dr. Wlasichuk determined Plaintiff had tenderness at the L4 and L5 levels, a trigger point at the sciatic nerve on the right side, an abnormal sensory exam in her foot, "reduced knee jerk," and a positive straight leg raise test. (*Id.* at 43) Dr. Wlasichuk opined Plaintiff needed vocational rehabilitation. (*Id.*)

Dr. Wlasichuk continued to find "abnormal" results upon examining Plaintiff's lumbar spine through November 2012. (*See* Doc. 9-9 at 76-78; Doc. 9-10 at 64) On November 12, Dr. Hightower administered another epidural steroid injection. (Doc. 9-9 at 80)

Dr. W. Jackson reviewed the record and completed a physical residual functional capacity

assessment on November 19, 2012. (Doc. 9-4 at 11-12) Dr. Jackson believed Plaintiff was "partially credible," opining her allegations of "lower back and right leg pain" were "partially substantiated by MRI findings of desiccation and decreased disk height." (*Id.* at 11) However, Dr. Jackson noted Plaintiff's "gait appears normal during physical exams." (*Id.*) According to Dr. Jackson, Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk "[a]bout 6 hours in an 8-hour workday;" and sit for "[a]bout 6 hours in an 8-hour workday." (*Id.* at 11-12) In addition, Dr. Jackson concluded Plaintiff could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. (*Id.* at 12) Dr. Jackson believed Plaintiff could also occasionally stoop, kneel, crouch, and crawl. (*Id.*)

Dr. Wlasichuk completed a medical source statement on January 25, 2013. (Doc. 9-11 at 33) According to Dr. Wlasichuk, Plaintiff had the ability to lift and carry ten pounds occasionally and less than ten pounds frequently due to right sciatica. (*Id.*) In addition, Dr. Wlasichuk opined Plaintiff could stand and/or walk "[a]t least 2 hours in an 8-hour workday" and sit "4 hours" with normal breaks in an 8-hour workday. (*Id.* at 34) He believed Plaintiff needed to be able to alternate sitting and standing, and needed a break "every hour for 10 minutes" to have relief. (*Id.*) Further, Dr. Wlasichuk indicated Plaintiff could never climb, crouch, or crawl; but could occasionally balance, stoop, kneel, reach, handle, or finger. (*Id.*) He explained Plaintiff was "unable to crouch, climb or crawl due to into intolerable pain in [her] low back." (*Id.*) Dr. Wlasichuk also believed Plaintiff had environmental restrictions for "safety reason[s]" and could not be exposed to heights, moving machinery, temperature extremes, chemicals, or dust. (*Id.*) Dr. Wlasichuk noted his opinions were supported by the MRI indicating degenerative disc disease, nerve conduction study, and the administration of two epidural steroid injections. (*Id.* at 35)

Dr. Roger Fast reviewed the record on July 12, 2013, and completed a physical residual functional capacity assessment in evaluating Plaintiff's claims at the reconsideration level. (Doc. 9-4 at 39-40) He believed Plaintiff's allegations of pain were "out of proportion to objective findings." (*Id.* at 40) Dr. Fast noted, "Her MRI shows only minimal disc narrowing and bulging and no stenosis. Her objective exam findings show good strength and normal gait." (*Id.*) Therefore he affirmed the decision and limitations imposed by Dr. Jackson at the initial level. (*Id.*)

**B.     Hearing Testimony**

Plaintiff testified at the administrative hearing before the ALJ on November 6, 2014. (Doc. 9-3 at 32) She reported she had an eleventh-grade education and "a safe serve certificate" for food safety with serving. (*Id.* at 34-35) Plaintiff said she worked for Department of Education for "20-some years," working at various locations in positions related to food service. (*Id.* at 37-38) Plaintiff stated the last position she held was as "a food server," until she slipped in the freezer. (*Id.* at 38) She reported for "a short period time after [she] was injured," she was also paid to babysit her grandson, which required Plaintiff to "pick him up from school." (*Id.* at 35)

She believed she was unable to work because her right leg would "just go[] out." (Doc. 9-3 at 39) Plaintiff said she could "get to where [she] can't walk," and "can't move hardly" without holding onto something so she would not fall. (*Id.*)

Plaintiff reported she did not "get out much," though she walked to a store "about a block from [her] house," "probably five times a day." (Doc. 9-3 at 34, 49) Plaintiff said that she was able to drive, and did so "probably… five times a week." (*Id.* at 34) Plaintiff explained she drove to the grocery store, and "[o]nce or twice a month… might drive to [her] daughter's house," which was about a 45-mile drive. (*Id.*)

She testified that she was able to walk three blocks, unless she was carrying something such as a gallon of milk, in which case she was unable to make it even "a half a block" from the store. (Doc. 9-3 at 41) Plaintiff believed she was able to standing and walk for "maybe 30 to 45 minutes" at one time, after which she would "start feeling pressure in [her] lower back, and [her] butt cheek always hurts." (*Id.* at 42) In addition, she said she could sit for up to "30 minutes or so." (*Id.*)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ first determined Plaintiff did "not engage[] in substantial gainful activity since April 12, 2011, the alleged onset date." (Doc. 9-3 at 17) At step two, the ALJ found Plaintiff's severe impairments included: "lumbar spine degenerative joint disease and degenerative disc disease with radiculitis/sciatica." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.*) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could sit 6 hours, stand and/or walk 6 hours in an 8-hour workday. This capacity most closely approximates light work as defined in 20 CFR 404.1567(b) except she could frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, [and] occasionally stoop, kneel, crouch, or crawl.

(*Id.* at 17-18) With these limitations, the ALJ found at step four that Plaintiff was not able to perform any past relevant work. (*Id.* at 22) However, the ALJ determined, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including mail clerk/sorter, marker, and office helper. (*Id.* at 22-23) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 23)

## **DISCUSSION AND ANALYSIS**

Plaintiff contends the ALJ erred in reviewing the medical record and evaluating the credibility of her subjective complaints. (*See generally* Doc. 12 at 10-22) On the other hand, the Commissioner contends that "the ALJ's findings are supported by substantial evidence and free from reversible legal error." (Doc. 16 at 27; *see also id.* at 15-27)

**A. ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by

9

substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff contends the ALJ erred in rejecting opinions offered by Dr. Wlasichuk, her treating physician. (Doc. 13 at 10-16) Defendant argues that "the ALJ appropriately rejected Dr. Wlasichuk's conclusions about Plaintiff's allegedly disabling physical limitations." (Doc. 16 at 15) Because opinions of Dr. Wlasichuk were contradicted by other physicians— including Drs. Jackson and Fast— the ALJ was required to set forth specific and legitimate reasons to support the decision to reject the opinions. *See Lester*, 81 F.3d at 830.

Examining the medical evidence, the ALJ summarized the conclusions of Dr. Wlasichuk and the weight given to the opinion as follows:

> Treating physician Dr. Michael Wlasichuk provided a medical source statement in which he suggested the claimant would be limited to lifting and carrying 10 pounds or less, standing and/or walking at least 2 hours with normal breaks, and [sitting] 4 hours with normal breaks. He stated she would need to alternate sitting and standing every hour for 10 minutes; she could never climb, occasionally balance, stoop, kneel, reach, handle, and finger, but never crouch or crawl. He further opined the claimant must avoid hazards due to right lower extremity radiculitis. In support of his opinion, Dr. Wlasichuk cited two lumbar spine epidural steroid injection therapy dates and two MRIs from mid to late 2011 which indicated degenerative disc disease of the lumbar spine (Exhibit 13F).
>
> I accord this opinion little weight as it appears to be overreaching and extreme in light of the other opinions and the objective medical evidence of record. Furthermore, Dr. Wlasichuk provided very little clinical data and objective findings to support his conclusion.

(Doc. 9-3 at 21) Plaintiff contends the ALJ's reasons for rejecting the opinion of Dr. Wlasichuk are not "specific and legitimate," as required by the Ninth Circuit. (Doc. 13 at 16)

1.   Conflict with the objective medical evidence

The Ninth Circuit has determined that an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). Significantly, when an ALJ believes the

treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out *a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ failed meet this burden because she did not identify the clinical findings he believed to be conflict with the limitations identified by Dr. Wlasichuk.[2] Rather, the ALJ has offered only her conclusion that the limitations identified by Dr. Wlasichuk were "overreaching and extreme in light of the other opinions and the objective medical evidence of record" (*See* Doc. 9-3 at 21), without identifying the conflicting evidence in the record. Therefore, the purported conflict with the medical record is not a specific, legitimate reason for rejecting Dr. Wlasichuk's opinions regarding Plaintiff's physical limitations. *See Cotton*, 799 F.3d at 1408; *Reddick*, 157 F.3d at 725.

2.  Support of objective findings

The opinion of a treating physician may be rejected when it lacks the support of clinical findings. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (an opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); SSR 96-2p, 1996 SSR LEXIS 9 at *9 (explaining the opinion of a physician is not entitled to controlling weight when it "is not well-supported by medically acceptable clinical and laboratory diagnostic techniques"). Here, Dr. Wlasichuk explained that his findings regarding Plaintiff's postural and environmental limitations were due to Plaintiff's right sciatica and supported by the MRI indicating degenerative disc disease, nerve conduction study results, and the administration of two epidural steroid injections. (Doc.

---

[2] The Court may not accept post hoc explanations, and cannot affirm on grounds not invoked by the ALJ. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the court could not consider the inconsistencies identified by the government and not the ALJ because the court is "constrained to review the reasons the ALJ asserts"). Defendant identifies evidence in the ALJ's summary of the medical record that the Commissioner asserts conflicts with the limitations identified by Dr. Wlasichuk. (Doc. 16 at 15-18). However, the ALJ fails to address this evidence in explaining the weight given to Dr. Wlasichuk's opinion. (*See* Doc. 9-3 at 21) Consequently, the Court is unable to consider the inconsistences identified by the Commissioner.

9-11 at 35) Consequently, the opinion was not without objective support from the medical record, and this reason does not support the ALJ's decision to reject the limitations identified by Dr. Wlasichuk.

### 3. Conclusion

The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). There, the ALJ offered only her conclusion that Dr. Wlasichuk's opinion conflicted with the medical record and was not supported by objective findings. Given the lack of specificity, the ALJ failed to meet her burden to identify specific and legitimate reasons to reject the limitations and erred in evaluating the medical record.

## B.     Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by Plaintiff's treating physician, Dr. Wlasichuk. Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's physical residual functional capacity. *See Moisa*, 367 F.3d at 886.

///

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate based upon the review of the medical evidence, the Court declines to address the remaining issues raised by Plaintiff in her opening brief. Therefore, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Laura Lee Guinn and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __January 2, 2018__        /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE